## WADE A. CAMPBELL, ET AL.

v.

## MARC E. BETTIUS, ET AL.

Record No. 911928

September 18, 1992

Present: All the Justices

*Lawrence E. Freedman* for appellants.

*Gerald R. Walsh (Robert F. Donnelly, Jr.; Walsh & Cremins*, on brief), for appellees.

JUSTICE LACY delivered the opinion of the Court.

The dispositive issues in this legal malpractice case are whether the plaintiffs adequately alleged a cause of action for fraud and whether the plaintiffs' evidence supported a finding that the defendants' negligence proximately caused the damage which the plaintiffs claimed.

In 1982, Manchester Lakes Associates (Manchester Lakes), a Virginia limited partnership, purchased 192 acres of land in several parcels from various sellers for a residential development. Manchester Lakes paid each seller a portion of the purchase price in cash, issuing promissory notes for the remainder. First deeds of trust on the parcels secured those notes. These liens subsequently were subordinated to a lien held by Dominion Federal Savings and Loan (Dominion), a limited partner of Manchester Lakes. Sellers of two of the parcels, Raymond L. Campbell and his wife and Wade A. Campbell and his wife (the Campbells), received promissory notes personally guaranteed by James L. Brehony, a general partner in Manchester Lakes, and Frederick M. Lacey, Jr.

In 1984, Manchester Lakes defaulted on all the promissory notes. Thereafter, the noteholders hired attorney Marc E. Bettius and his firm (Bettius) to represent their interests. Bettius filed suits on behalf of the noteholders against Manchester Lakes, Dominion, and other entities. Those actions challenged the original subordination of the noteholders' liens to the Dominion lien, and alleged, *inter alia*, fraud and civil conspiracy to injure business.[1] In an attempt to settle the litigation, Dominion offered the noteholders 80% of the amount outstanding on their notes in exchange for the dismissal of the suits and the surrender of their notes. This offer was contingent on unanimous agreement of all the sellers to those terms.

The Campbells advised Bettius that they did not want to accept the Dominion settlement offer. Rather, they wanted to recover the full outstanding value of their notes because, unlike those of the other noteholders, Brehony and Lacey personally guaranteed their notes. The Campbells agreed to accept the Dominion settlement offer only after Bettius advised them that they could later proceed on the guarantees to recover the remaining 20% of the notes because their rights were preserved by language drafted by Bettius and added to the notes and releases.[2] Under the terms of the settlement agreement, each Campbell couple received over $250,000, and Bettius received $150,000 in additional attorney's fees from the proceeds of the settlement when the parties executed the settlement agreements.

---

[1] Identical but separate suits were filed for each noteholder.

[2] The statements "All rights reserved against James L. Brehony and Frederick M. Lacey, Jr.," and "All rights reserved against Personal Guarantors," were added to the settlement releases and notes, respectively.

Following settlement, the Campbells employed another attorney to pursue their claims against the guarantors. In dismissing the Campbells' suit seeking the unpaid amount of the notes, the trial court held that the surrender of the notes in the previous settlement barred any recovery based on the guarantees contained in those notes or in the settlement releases, and a jury found that there was no independent agreement between the Campbells and Lacey to pay the remaining 20% of the notes.

The Campbells then filed these suits, alleging that Bettius's actions constituted fraud and legal malpractice.[3] The Campbells sought damages in the amount of $63,000 per couple, plus recovery of the attorney's fees expended in their suit to recover on the personal guarantees. Bettius filed a demurrer to the fraud allegation, which the trial court sustained without leave to amend. Following the close of the Campbells' evidence, the trial court granted Bettius's motion to strike the evidence of legal malpractice and dismissed the case. We awarded the Campbells this appeal.

## I.

### The Pleadings

In Count II of their amended motion for judgment, the Campbells alleged that Bettius, knowing that the Campbells ''would not enter into the agreement if it meant giving up their rights against the guarantors,'' told the Campbells that, by adding the language to the notes and settlement agreements reserving the Campbells' rights against the guarantors, the Campbells

would thereby be protecting their rights and would be able to collect the additional 20 percent of their note from the guarantors on the note.

The Campbells alleged that Bettius made these representations

either knowing that said representations were false at the time made and were made fraudulently, deliberatively, maliciously and wilfully with gross negligence or with a wanton, wilful and

---

[3] Separate but identical suits were filed by Raymond and Wade Campbell and their wives. The suits were tried together and consolidated for appeal.

reckless disregard for the rights of the [Campbells] for the pur-
pose of inducing the [Campbells] to enter into the settlement
agreement. . . .

Finally, the Campbells alleged that these representations were made
so that Bettius could ''collect under the settlement agreement an
additional $150,000.00 fee.''

The demurrer which Bettius filed attacked these allegations in
two particulars: (1) the allegedly offending representations were
predictions of future events rather than of present facts and, there-
fore, were insufficient to support a cause of action for fraud; and (2)
the fraud allegations lacked particularity. The trial court did not
identify the ground or grounds on which it granted the demurrer, so
we consider both grounds raised by Bettius in order.

First, Bettius argues that the alleged fraudulent representation that
the Campbells ''would be able to collect'' the remaining 20% from
the guarantors is no more than a prediction of future events, and that
''[i]naccurate prognostications and predictions'' are not actionable
as fraud. *See generally Soble* v. *Herman*, 175 Va. 489, 500, 9 S.E.2d
459, 464 (1940).

Bettius reads the pleadings too narrowly, however. The
offending representations recited in the pleadings included an alle-
gation that Bettius told the Campbells that their rights would not be
defeated if they endorsed over the notes because the reservation of
rights language protected the Campbells. This alleged representation
communicated the present effect of the reservation language, not its
future impact. Accordingly, the trial court erred to the extent it sus-
tained the demurrer on the ground that the allegations did not con-
tain statements of present fact but predictions of future events.

We find Bettius's second assertion that the fraud allegations
lacked particularity equally meritless. The pleadings alleged spe-
cific facts which identified as fraudulent the representations made
by Bettius to the Campbells to induce them to take a course of
action which would result in a monetary benefit to Bettius. The
pleadings further alleged that the Campbells acted to their detriment
in reliance on Bettius's representations. These allegations pleaded
fraud with sufficient particularity. Accordingly, we will reverse the
judgment of the trial court dismissing the fraud count, Count II of
the amended motion for judgment.

## II.

### The Evidence

The trial court sustained Bettius's motion to strike the Campbells' evidence, holding that the evidence did not show that Bettius's alleged negligence proximately caused the damage which the Campbells claimed.

█ In a legal malpractice action, the fact of negligence alone is insufficient to support a recovery of damages. The client must prove that the attorney's negligence proximately caused the damages claimed. *Duvall, Blackburn, Hale & Downey* v. *Siddiqui*, 243 Va. 494, 497, 416 S.E.2d 448, 450 (1992); *Allied Productions* v. *Duesterdick*, 217 Va. 763, 764-65, 232 S.E.2d 774, 775 (1977). The Campbells established a *prima facie* case of negligence through their testimony that Bettius represented to them that their rights against the guarantors of the notes were preserved by virtue of the language added to the promissory notes and to the settlement releases. As a result of that negligent representation, the Campbells agreed to the settlement, surrendered the notes, dismissed the lawsuit, and received a total recovery of approximately $500,000.

█ The Campbells claim that

> [b]ut for the faulty advice the Plaintiffs would have recovered a greater amount than the settlement amount of 80 percent of the note from the maker of the note and/or its guarantors.

The Campbells' evidentiary burden was to show what they would have recovered, not if Bettius's faulty advice had been correct, but if Bettius had given the correct advice. Furthermore, such recovery would have to be more favorable than the amounts actually received.[4]

The faulty representations were made in connection with the litigation which the Campbells and the other noteholders filed against Manchester Lakes, Dominion, and others. Raymond Campbell testified that, had he been given the correct advice, he still would have entered into the settlement. The remaining Campbells, however, stated unequivocally that they would not have settled the case had they been advised properly. The evidence is clear that without

---

[4] The Campbells claimed that their recovery would have exceeded the settlement amount by $127,000.

agreement by all of the noteholders, the settlement could not have been consummated. Therefore, on the basis of the Campbells' testimony, the litigation would have proceeded.

The Campbells' evidence in the malpractice action included their pleadings in the litigation against Manchester Lakes and Dominion. In those pleadings they alleged that the defendants had denied liability on the notes, had refused to make payments on them, and that the notes were in default. The Campbells sought a judgment that the defendants were "liable to the Plaintiffs in the amount of $652,656.26, together with interest thereon until paid, attorneys' fees and costs of collection as set forth in the subject notes."

If the Campbells had prevailed on this claim, they would have received judgment in the full amount of the notes, a more favorable result than that obtained through settlement. Indeed, if the Campbells had prevailed on other counts in the lawsuit, for which they sought punitive damages of $10,000,000 and treble damages of $1,957,695.78, the result would have been significantly more favorable to them.

But the Campbells produced no evidence in this malpractice action to indicate what might have happened if the settlement had not been consummated and if the case had proceeded to trial. There is nothing in the record which addresses the probability that the Campbells would have succeeded in obtaining recovery in excess of $500,000 from the prosecution of the previous litigation, or which indicates what the status of the notes, including any remaining liability of the guarantors, would have been at the termination of that litigation, whether successful or not. In the absence of such evidence, there is no way to compare the recovery the Campbells would have obtained with the settlement they actually received. Furthermore, without this evidence, the necessity of incurring additional legal fees to pursue claims against the guarantors has not been shown. Therefore, the trial court correctly held that any conclusion regarding damages sustained as a result of the faulty advice would be purely speculative.[5] *Siddiqui*, 243 Va. at 497, 416 S.E.2d at 450.

Accordingly, for the reasons stated, we will affirm the judgment of the trial court on the negligence count, reverse the judgment

---

[5] In light of this disposition, it is unnecessary to address the issue of collectability of any damage suffered.

which dismissed the fraud count, and remand the case for further proceedings.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

JUSTICE STEPHENSON, with whom JUSTICE WHITING joins, concurring.

I join the majority opinion. I write separately only because my reading of the motion for judgment suggests that the damages claimed as a result of the alleged fraud are the same as the damages claimed, but not proved, as a result of the legal malpractice. If this is the case, then final judgment should be entered in favor of Bettius because, obviously, the Campbells cannot be given a second opportunity to prove the same damages. Upon remand, therefore, I think the trial court should resolve this issue.