UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

ILANA COHEN,

*Plaintiff-Appellant,*

v.

DURACELL INTERNATIONAL U.S.A.;
VECTACOR, INCORPORATED,

*Defendants-Appellees.*

No. 00-1022

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CA-98-2923-WMN)

Argued: September 25, 2000

Decided: January 26, 2001

Before WIDENER and LUTTIG, Circuit Judges, and
Jackson L. KISER, Senior United States District Judge
for the Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

## COUNSEL

**ARGUED:** Belinda Cooper Matlock, MATLOCK & MATLOCK,
Frederick, Maryland, for Appellant. Teresa Westby Kenney, JOR-
DAN, COYNE & SAVITS, L.L.P., Washington, D.C., for Appellee
Duracell; Michael Sean DeBaugh, LORD & WHIP, P.A., Baltimore,
Maryland, for Appellee Vectacor. **ON BRIEF:** Shawn A. Matlock,

MATLOCK & MATLOCK, Frederick, Maryland, for Appellant. David B. Stratton, JORDAN, COYNE & SAVITS, L.L.P., Washington, D.C., for Appellee Duracell.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

This case is an appeal in a products liability action of the dismissal of Appellant's punitive damages claim against Appellee Duracell and the grant of Appellees' motion for summary judgment.

Appellant Ilana Cohen ("Cohen") improperly inserted (backwards) one of four D-size batteries made by Appellee Duracell International USA ("Duracell") into a small portable fan made by Appellee Vectacor Incorporated ("Vectacor"). She did so having been familiar with battery warnings[1] and aware of the danger that improper battery insertion could pose. Despite the battery's improper insertion, however, Ms. Cohen continued to use the fan because the fan seemed to operate in a normal manner. A day later, Ms. Cohen fell asleep for twenty minutes with the operating fan placed on her stomach. Two of the four batteries leaked[2] onto her abdomen, resulting in severe injury, disfigurement, and pain.

---

[1]It is unclear whether she read the warnings on the actual batteries involved in this case, as her response to the "Battery Questionnaire" conflicts with statements made during her deposition. In any event, the evidence makes clear that Ms. Cohen was definitely aware that reversed polarity insertion was incorrect and that such incorrect insertion could result in physical injury.

[2]More technically, the reversed polarity of the improperly inserted battery caused a charge to build up and posed a hazardous condition as the electrolyte in the batteries became heated. Duracell batteries, like almost all known alkaline batteries, contain a safety mechanism to prevent explosions in such situation, however: the batteries vent electrolyte so as to relieve the pressure caused by the charge buildup. This process of venting is known in the vernacular as a battery "leaking."

Given this background, Appellant Cohen seeks to recover under two theories: negligence, based upon alleged design defects and inadequate warnings, and strict liability, based on the firms' introduction into the stream of commerce of allegedly defective or unreasonably dangerous products. J.A. at 667. In addition, Cohen seeks punitive damages from Duracell on the basis that the battery maker demonstrated reckless disregard by not incorporating a design change to prevent leaking in the wake of hundreds of prior such incidents.

The District Court, Nickerson, J., dismissed Appellant Cohen's claim for punitive damages against Appellee Duracell because the claim relied on allegations of "reckless disregard" that cannot meet the Maryland standard of "actual malice" as a matter of law. J.A. at 237. After excluding Appellant's expert testimony, Judge Nickerson then granted Appellees' motion for summary judgment, finding that Appellant failed to establish a defect in either product and, even if such defect were established, that Appellant's contributory negligence barred recovery. Appellant now appeals both of these decisions. Because we find that Appellant fails to prove any defect in the products involved, we affirm.

### *LEGAL STANDARD*

The grant or denial of summary judgment is reviewed *de novo*. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Higgins v. E.I. Dupont de Nemours & Co.*, 863 F.2d 1162, 1167 (4th Cir. 1988). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1129 (4th Cir. 1987).

Summary judgment is appropriate where no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Where the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, however, then no genuine issue exists for

trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the movant has met its burden, "the nonmoving party must come forward with specific facts showing there is a genuine issue for trial" in order to defeat the summary judgment motion. *Matsushita Elec.*, 475 U.S. at 587. Under Rule 56(e), the plaintiffs must introduce admissible evidence demonstrating a genuine issue of fact on each element of their claims. Fed. R. Civ. P. 56(e). Yet, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient," *Anderson*, 477 U.S. at 250, for "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

## *DISCUSSION*

Turning to the case at hand, we find that Appellant fails to meet her burden on summary judgment. In order to prevail, a plaintiff in a products liability action must proffer "proof of a defect in the product, whatever the theory of liability." *Riordan v. Jones*, 793 F. Supp. 650, 651 (D. Md. 1992). Because Appellant Cohen fails to prove such a defect with regard to either the batteries or the fan, no reasonable jury could return a verdict in her favor on any of the claims asserted.

Between negligence and strict liability, Appellant's stronger theory for recovery is under strict liability because "the plaintiff is not required to impugn the conduct of the maker" but is merely required "to impugn the product" by a showing that the product is defective in a way that is unreasonably dangerous. *Prosser & Keeton on Torts* § 99, at 695 (5th ed. 1994) The present-day elements to a claim in strict liability under Maryland law originated in *Phipps v. General Motors Corp.*, 278 Md. 337 (1976): (1) the product was in a defective state when it left the control or possession of the seller, (2) the product was unreasonably dangerous to the user or consumer, (3) the defect was a cause of the injury, and (4) the product was expected to and did reach the consumer without substantial change in condition. *Id*. In this action, however, Appellant fails to demonstrate any defect in either the batteries or the fan. As a result, the granting of summary

judgment in favor of Appellees is correct because Appellant's claims necessarily fail.[3]

Given the millions of batteries in this electronically-driven world, we make no shocking revelation in noting that some consumers will insert batteries improperly no matter what safety precautions are taken. To prevent these occurrences, Appellant Duracell has included conspicuous warnings not only on battery packaging, but also on the individual batteries themselves. Moreover, in the event that a consumer improperly inserts Appellee's battery notwithstanding the warnings, the product was designed with a venting procedure whereby the batteries leak in order to prevent even greater hazards, such as battery explosions. *See* Footnote 2, *supra*. The latter scenario is precisely what occurred in this case: by leaking, the battery performed exactly as hoped so as to prevent an explosion, and even greater injury, from occurring.

Such safety features do not render the product defective, and they certainly cannot be said to approach anything unreasonably dangerous. Indeed, Appellant admitted to having read battery warnings and having known of the danger posed by improper battery insertion. Moreover, the uncontroverted evidence[4] indicated that the Duracell safety design was the "pinnacle" of the industry and conformed to all government standards. J.A. at 304. Without evidence of a defect in the design or manufacture of the battery, Appellant simply cannot

---

[3]Although Appellant never attempted to recover under a breach of warranty theory, the lack of proof of defect in either product would obviously prove fatal to such a claim as well.

[4]Much attention was diverted in the parties' briefs and oral arguments to the District Court's exclusion of the testimony of the Appellant's expert, Michael Leschner. While we strongly believe that the lower court was not in error in excluding Mr. Leschner, that determination has little impact on this appeal. Mr. Leschner directs most of his attention to the warning labels on the batteries and fan. Yet, he has no expertise in the area of warning labels or consumer electronics and instead relies on a "common sense" standard that adds little, if any, probative weight to the bare allegations contained in the Amended Complaint. As such, Appellant's theories of recovery fail regardless of whether the "expert" testimony is included.

recover in either negligence or strict liability against Appellee Duracell.

Appellant also fails to set forth a prima facie case with regards to Appellee Vectacor because Appellant again fails to give any evidence of defect. The product contained adequate warnings: the fan itself had elevated markings molded into the plastic nearby the battery compartment, and the fan's instructions directed the user to insert the batteries "as the diagram in the fan shows." *Id.* at 666. Appellant's own testimony not only indicates that these markings were sufficiently visible, but also that she actually noticed them and attempted to insert the batteries as they directed. *Id.* at 412-13. Given the sufficiency of the notice provided by Vectacor regarding battery insertion and the proper functioning of the device, we find that the fan was not defective. Appellant therefore necessarily fails on both theories of the case that she appeals against Appellee Vectacor.

Because Appellant fails to make a prima facie case against either Appellee, the additional issues discussed below are rendered moot.[5] Accordingly, the judgment of the District Court is affirmed.

*AFFIRMED*

---

[5]Since we affirm based on Appellant's failure to prove the elements necessary for recovery under negligence or strict liability, we do not need reach the issues raised below regarding contributory negligence and last clear chance.