HUMPHREYS, J., with whom FELTON, C.J., ELDER, FRANK and PETTY, JJ.,
join, dissenting.
Because the analysis and holding of the majority rests entirely upon the sort of appellate fact-finding by this Court that our Supreme Court sought to restrain in Whitehead v. Commonwealth, 278 Va. 105, 677 S.E.2d 265 (2009), modified, Rec. No. 080775 (Oct. 22, 2009), and because I disagree with the merits of the majority’s analysis and its conclusion that by voluntarily taking the breath test, appellant somehow conceded the admissibility of the test results in court, I dissent from the holding and judgment in this ease. Furthermore, I believe such a holding is contrary to both the basic rules of evidence and existing case law. I would hold that the trial court erred in admitting the certificate containing the results of appellant’s breath test pursuant to the implied consent statute, and I would, thus, reverse the conviction and remand for a new trial if the Commonwealth is so advised.
I. Applicability of Whitehead v. Commonwealth
When this case was originally appealed to this Court, the Attorney General filed a brief that took the identical legal position as that taken by the prosecutor in the trial court— that the certificate was admissible because the implied consent statute both applied and its requirements were satisfied. The entire focus of both parties before the three-judge panel of this Court was whether the implied consent statute applied to an arrest following an accident, which may or may not have occurred “upon a highway of the Commonwealth.” There was no assertion by the Attorney General that any other rationale existed for admitting the certificate in this case.[22] Nor did the prosecutor make any such assertion at trial. Indeed, the *676 rationale advanced and relied upon by the majority was first raised in the panel majority’s opinion and only adopted later, and for the first time, by the Attorney General when this case was re-argued en banc. It seems to me that the majority’s analysis represents an exact repetition of the sort of de novo appellate fact-finding that our Supreme Court sought to check in Whitehead.
In Whitehead, this Court, sitting en banc, affirmed Whitehead’s conviction on the theory that she “aid[ed] in the concealment of the stolen property.” 278 Va. at 114, 677 S.E.2d at 270. However, this legal theory was never argued by the Commonwealth, either in the trial court or before this Court on appeal. As our Supreme Court noted, “[t]he first appearance of the concealment theory in the record is in the opinion of the Court of Appeals.” Id. Similarly, in this case, the first appearance of the alternative basis for admitting the certificate was in the panel majority’s opinion, and was neither raised in the trial court nor argued before the three-judge panel. Only when we granted en banc review did the Office of the Attorney General, apparently having determined that the panel majority had advanced a better theory for the admissibility of the certificate than it had, abandon its earlier appellate position and adopt the analysis and arguments of the panel majority. The Attorney General’s nouveau position is not necessarily too little, but in my view, it comes too late.
While appellate courts may affirm the ruling of a trial court when it has reached the right result for the wrong reason, this rule does not always apply. In Whitehead, our Supreme Court expressly adopted the holdings of this Court in Harris v. Commonwealth, 39 Va.App. 670, 675-76, 576 S.E.2d 228, 231 (2003) (“[T]he proper application of this rule does not include those cases where, because the trial court has rejected the right reason or confined its decision to a specific ground, further factual resolution is needed before the right reason may be assigned to support the trial court’s decision.” (emphasis added)), and in Blackman v. Commonwealth, 45 Va.App. 633, 642-43, 613 S.E.2d 460, 465 (2005) (“[A]n appellee may argue for the first time on appeal any legal ground in *677 support of a judgment so long as it does not require new factual determinations.” (emphasis added)).
In this ease, the trial court clearly confined its ruling to a specific ground—that the implied consent statute applied to the breath test in this case—and, as in Whitehead, additional fact-finding regarding the foundation for the majority’s alternate theory of admissibility would clearly be necessary. The concealment theory at issue in Whitehead was “an alternative means of establishing guilt” under the Code. 278 Va. at 114, 677 S.E.2d at 270. As such, it required proof of different elements than those advanced at trial. Similarly, and as discussed more fully below, the alternative basis for the certificate’s admission advocated by the majority involves different foundational requirements that in turn necessitates additional fact-finding.
Moreover, a “right result, wrong reason” analysis is inappropriate here for two other reasons. First, the “right reason” was never before the trial court, either explicitly or implicitly. Although the majority points to the testimony of Officer Weinstein that Roseborough took the breath test voluntarily, Weinstein was a witness, not the attorney for the Commonwealth. Thus, while the fact that Roseborough took the test voluntarily was arguably before the trial court, the issue that the test was admissible on that basis was not since the prosecutor never asked the trial court to consider that alternate basis for admissibility. Second, in finding that the foundation was sufficient for admitting the certificate of analysis under its alternative means of establishing admissibility, the majority also steps into the role of a trial court and engages in precisely the kind of appellate fact-finding Whitehead prohibits.
For these reasons, I would decide the merits of the issue presented in this appeal solely upon the basis raised by the parties in the trial court and originally presented to this Court on appeal.
*678 II. Admissibility of the Certificate of Analysis
The majority finds that “[a]s appellant volunteered to provide the breath sample, without being influenced by the provisions of the implied consent law, those provisions are irrelevant here.” See supra at 664, 688 S.E.2d at 888. This statement by the majority combines and confuses two otherwise distinct legal issues: the voluntariness of appellant’s breath test when arrested and the admissibility of the certificate of analysis from appellant’s breath test as an exhibit at trial. As already noted above, notwithstanding the testimony of Officer Weinstein, it is clear from the record that the Commonwealth laid the foundation and sought the admission of the certificate based solely upon the applicability of the implied consent statute. Furthermore, the record unequivocally demonstrates that the trial court admitted the certificate on that basis and no other. Yet, the majority simply ignores what was actually argued to the trial court as well as the rationale stated by the trial court for its ruling, and finds another rationale for the certificate’s admissibility. The majority then substitutes that rationale for the one that was actually advanced in and accepted by the trial court. The majority begins with the notion that because appellant agreed to submit to the breath test, the provisions of the implied consent statute are inapplicable. The majority then ultimately concludes that because the taking of the breath test was voluntary, the results were ipso facto admissible at trial in the absence of an objection more specific than the one made here.
In response, I must initially point out that every submission to a breath test is essentially a voluntary act, whether conducted pursuant to Code § 18.2-268.2(A) or not. Our statutory scheme contemplates that by driving on the highways of the Commonwealth, one has consented to taking a breath or blood test. See Code § 18.2-268.2. This consent can only be withdrawn by an affirmative act revoking that consent. The only legal distinction between breath tests conducted pursuant to Code § 18.2-268.2 and those that are not is the foundation that is necessary in order to admit the test results as an exhibit at trial. It is axiomatic that criminal defendants do *679 not make binding decisions regarding the admissibility of evidence at the time of their arrest by virtue of their cooperation with law enforcement officers. Judges make these decisions, and they do so pursuant to the rules of evidence at the time the evidence is tendered to the fact finder. Thus, the mere fact that a breath test is voluntarily taken does not automatically render the results of that test admissible at trial, nor does it supply the necessary foundation for admissibility.[23]
The majority is content to look at Code § 18.2-268.2 in a vacuum stating that “[t]his statute does not address all instances when a breath test may be taken and includes no language addressing the admissibility of the resulting certificates of analysis at trial.” See supra at 662, 688 S.E.2d at 887. While this may be true in a literal sense, the majority has overlooked one of the most basic principles of appellate review. “[WJhen a given controversy involves a number of related statutes, they should be read and construed together in order to give full meaning, force, and effect to each.” Ainslie v. Inman, 265 Va. 347, 353, 577 S.E.2d 246, 249 (2003) (citing Kole v. City of Chesapeake, 247 Va. 51, 56, 439 S.E.2d 405, 408 (1994)). Therefore, we cannot merely examine Code § 18.2-268.2 in isolation, but must consider it in relation to other sections of the Code that concern the admissibility of such evidence.[24]
Barring a stipulation by the parties, before a certificate of analysis from a breath test may be admitted into evidence, the Commonwealth must first lay an adequate foundation for its *680 admissibility. The majority correctly notes that compliance with the implied consent statute is not necessarily a prerequisite for the admission of the results of a breath test. However, the majority ignores the fact that the foundation required for admission in other circumstances is far more stringent than that laid by the Commonwealth in this case.
Code § 18.2-268.9 outlines two categories of foundational requirements for the use of breath-test results as evidence in a prosecution for driving under the influence of alcohol or drugs.[25] For all cases involving a prosecution for driving under the influence, the statute provides, in pertinent part:
To be capable of being considered valid as evidence in a prosecution under §§ 18.2-266 ... chemical analysis of a person’s breath shall be performed by an individual possessing a valid license to conduct such tests, with a type of equipment and in accordance with methods approved by the Department of Criminal Justice Services, Division of Forensic Science. The Division shall test the accuracy of the breath-testing equipment at least once every six months. The Division shall establish a training program for all individuals who are to administer the breath tests. Upon a person’s successful completion of the training program, the Division may license him to conduct breath-test analyses. Such license shall identify the specific types of breath test equipment upon which the individual has successfully completed training....
Code § 18.2-268.9 (emphasis added).
Thus, no breath test evidence may be considered for admission unless the test was conducted by a properly licensed operator on properly approved equipment. The remaining language in Code § 18.2-268.9 states the foundational requirements for the admissibility of certificates reporting the analyses of breath tests, but expressly limits those requirements to *681 breath tests administered pursuant to Code § 18.2-268.2 as follows:
Any individual conducting a breath test under the provisions of § 18.2-268.2 shall issue a certificate which will indicate that the test was conducted in accordance with the Division’s specifications, the equipment on which the breath test was conducted has been tested within the past six months and has been found to be accurate, the name of the accused, that prior to administration of the test the accused was advised of his right to observe the process and see the blood alcohol reading on the equipment used to perform the breath test, the date and time the sample was taken from the accused, the sample’s alcohol content, and the name of the person who examined the sample. This certificate, when attested by the individual conducting the breath test, shall be admissible in any court in any criminal or civil proceeding as evidence of the facts therein stated and of the results of such analysis----
Code § 18.2-268.9 (emphasis added).
Basically, in order to introduce the results of a breath test in any prosecution under Code § 18.2-266, the operator and equipment must comply with the first paragraph of Code § 18.2-268.9 as part of the foundation for admissibility of the test results. However, if the implied consent statute is applicable, the only remaining foundational requirements are found in Code § 18.2-268.9 itself, and the certificate of analysis is admissible if the requirements of both the first and second paragraphs of that statute have been satisfied. In essence, the properly attested certificate by a certified operator using approved equipment, when coupled with the applicability of the implied consent statute, provides the necessary foundation. On the other hand, if the implied consent statute does not apply, as the majority suggests was the case here, then the streamlined statutory foundational requirements for admitting the certificate of analysis contained in the second paragraph of Code § 18.2-268.9 are likewise inapplicable. Under those circumstances, the test results would only be admissible following the laying of a proper foundation consistent with both *682 the first paragraph of Code § 18.2-268.9 and the additional requirements imposed by the traditional rules of evidence such as those prohibiting hearsay or governing expert witnesses. See Charles E. Friend, The Law of Evidence in Virginia § 14-5(a), at 573 (6th ed. 2003). Since the Commonwealth offered no evidentiary foundation, other than the assertion that the implied consent statute was applicable and the fact that the officer was a “certified Intox operator,” the trial court would have erred in admitting the test results even under the analysis of the majority.
However, the majority circumvents that result by reasoning from the negative and asserts that the trial court did not err in admitting the certificate because:
[ajppellant argued only that Code § 18.2-268.2(A) itself and particularly as interpreted in Durant and Thomas, precluded introduction of the certificate of analysis because the arrest was unlawful. Although appellant could have argued at trial that Code § 18.2-268.9 precluded introduction of the certificate here, he never made this argument to the trial court ... [and] does not argue that the ends of justice require consideration of Code § 18.2-268.9 or the foundation requirements for the certificate.
See supra at 669, 688 S.E.2d 890 (emphasis in original).
However, in making this assertion, the majority disregards a number of significant facts in the record. First, the Commonwealth offered no alternative basis for the admission of the certificate of analysis other than the applicability of Code § 18.2-268.2(A) “itself ” In fact, the sole foundation laid by the Commonwealth for the admissibility of the certificate was that (1) Officer Weinstein was a certified breathalyzer operator, (2) he advised appellant of the statutory presumption of sobriety found in Code § 18.2-269(A)(1), and (3) he substantially followed all of the procedures required for taking and admitting the results of a breath test pursuant to Code § 18.2-268.2 et seq. (the implied consent statutes). Thus, it seems obvious from the record that, in context, the exhibit was *683 clearly tendered for admission by the Commonwealth on the basis of compliance with Code § 18.2-268.2.
Second, appellant objected to the admission of the certificate of analysis pursuant to the implied consent statute, arguing that the Commonwealth failed to establish that he had been validly arrested—a prerequisite for the admissibility of test results obtained pursuant to Code § 18.2-268.2(A). See Bristol v. Commonwealth, 272 Va. 568, 636 S.E.2d 460 (2006). The Commonwealth never responded to this argument by asserting the inapplicability of Code § 18.2-268.2(A), as the majority now does on appeal. Instead, the Commonwealth argued that the implied consent statute did in fact apply and was satisfied, advancing no other argument in support of its position. After hearing lengthy arguments from both the prosecutor and defense counsel that focused exclusively on whether the arrest requirement of the implied consent statute was satisfied, the trial court stated, “I’m going to overrule the objection, [and] admit the Certificate of Analysis.” Furthermore, the trial court expressly stated that, in doing so, it relied on Easton v. Commonwealth, No. 2119-04-2, 2005 WL 1507103 (Va.Ct.App. Jun. 28, 2005),[26] an unpublished opinion of this Court, in making its ruling.
In Easton, the appellant challenged the admissibility of her certificate of analysis on the grounds that the requirements of the implied consent statute were not satisfied. This Court disagreed and affirmed her conviction because the certificate was admissible under the implied consent statute. In admitting the certificate of analysis, the trial court expressly noted that Easton was “almost identical” to the issue before it and then stated “Mr. Whitestone [counsel for appellant], you have a court reporter here. You can give the Court of Appeals another opportunity to revisit [sic], but in my estimation, they have already decided.” (Emphasis added). This statement by the trial court undoubtedly confirms that it admitted the certificate pursuant to the implied consent statute.
*684 The majority excuses any error by the trial court by asserting that appellant did not object specifically on the ground that Code § 18.2-268.9 or any other rule of evidence precluded introduction of the certificate of analysis. Assuming, without agreeing, that appellant’s objection lacked the requisite specificity to put in issue the rationale offered by the majority, the obvious point that must be made is that appellant did not have to object on other grounds if the ground upon which he did object, had merit.
Here, the Commonwealth offered the certificate of analysis into evidence and, in doing so, both proffered a foundation procedurally consistent with the requirements of a breath test taken pursuant to Code § 18.2-268.2 and specifically argued that the test was administered in compliance with the implied consent statute. Appellant then objected to the admission of the certificate based upon his perceived defect in the foundation for admissibility advanced by the Commonwealth. The trial court, after hearing arguments from both counsel which focused exclusively on whether or not the foundational requirements for the admissibility of the certificate of analysis had been met pursuant to the implied consent statute, and considering an unpublished decision from this Court which dealt with the very point in issue, admitted the evidence over appellant’s objection. In other words, the context of the decision by the trial court to admit the certificate of analysis as an exhibit was framed by (1) the foundation tendered by the Commonwealth, (2) the objection made by appellant to the sufficiency of that foundation, and (3) the arguments of counsel and the consideration of precedent which dealt with the arguments advanced. The rules of court surely require no more of an advocate in order to preserve the point for appeal than was done here. In my view, by requiring that counsel must respond to arguments, or grounds for admission of an exhibit, never advanced by the proponent of the exhibit, the majority has improperly advanced, sua sponte, an argument on behalf of the Commonwealth that was never made by the Commonwealth before this case reached this Court en banc. For these reasons, I disagree with the majority and would *685 reach the merits of the issue of the admissibility of the certificate of analysis on the basis argued and decided in the court below.
In that vein, Virginia’s implied consent statute, Code § 18.2-268.2(A), provides:
Any person, whether licensed by Virginia or not, who operates a motor vehicle upon a highway, as defined in § 46.2-100, in the Commonwealth shall be deemed thereby, as a condition of such operation, to have consented to have samples of his blood, breath, or both blood and breath taken for a chemical test to determine the alcohol, drug, or both alcohol and drug content of his blood, if he is arrested for violation of § 18.2-266, 18.2-266.1, or subsection B of § 18.2-272 or of a similar ordinance within three hours of the alleged offense.
Thus, the results of a breath test administered pursuant to Code § 18.2-268.2(A) are admissible against the accused in a trial for driving under the influence, so long as the accused has first been validly arrested. Durant v. City of Suffolk, 4 Va.App. 445, 448, 358 S.E.2d 732, 734 (1987). Appellant argues on appeal, as he did to the trial court, that the statutory requirements for a valid, warrantless arrest were not satisfied in this instance.
Code § 19.2-81 delineates the circumstances under which an officer may arrest a person without a warrant. For misdemeanors, the general rule is that an officer may not make a warrantless arrest of a person, unless the crime was committed in the officer’s presence. Galliher v. Commonwealth, 161 Va. 1014, 1021, 170 S.E. 734, 736 (1933). “An offense is committed within the presence of an officer, within the meaning of this rule, when he has direct personal knowledge, through his sight, hearing, or other senses that it is then and there being committed.” Id.
The offense for which appellant was arrested is a misdemeanor, and was not committed “within the presence” of the officer. The officer arrived at the scene approximately thirty minutes after the single vehicle accident within the private, *686 gated community. He did not observe appellant drive or operate the vehicle in any way. The officer had no “direct personal knowledge” that an offense was “then and there being committed.” Id. (emphasis added). Therefore, appellant’s arrest was invalid unless an exception to the presence requirement of Code § 19.2-81 applied.
“[T]he legislature set forth certain exceptions to the misdemeanor presence rule in Code § 19.2-81, indicating that a deviation from the presence requirement is authorized only in these limited circumstances.” Penn v. Commonwealth, 13 Va.App. 399, 404, 412 S.E.2d 189,192 (1991), aff'd, 244 Va. 218, 420 S.E.2d 713 (1992). The exception to the presence requirement of Code § 19.2-81 that concerns the issue before us involves motor vehicle accidents occurring on “any of the highways ... of the Commonwealth.” (Emphasis added). Pursuant to the statute, “such officer may, within three hours of the occurrence of any such accident involving a motor vehicle, arrest without a warrant at any location any person whom the officer has probable cause to suspect of driving or operating such motor vehicle while intoxicated in violation of § 18.2-266----” Code § 19.2-81 (emphasis added). Appellant argues that this exception does not apply because the gated roadways of the Watergate at Landmark apartment complex do not constitute a “highway of the Commonwealth” for purposes of Code § 19.2-81.1 agree.[27]
This Court has not previously had occasion to construe the phrase “highways of the Commonwealth” in the context of Code § 19.2-81. “Statutory interpretation presents a pure question of law and is accordingly subject to de novo review. ...” Washington v. Commonwealth, 272 Va. 449, 455, *687 634 S.E.2d 310, 313 (2006) (citing Ainslie, 265 Va. at 352, 577 S.E.2d at 248). “[W]e [the Court] must determine the General Assembly’s intent from the words contained in a statute.” Id. (citing Commonwealth v. Diaz, 266 Va. 260, 264-65, 585 S.E.2d 552, 554 (2003)). “[W]hen a given controversy involves a number of related statutes, they should be read and construed together in order to give full meaning, force, and effect to each.” Ainslie, 265 Va. at 353, 577 S.E.2d at 249 (citing Kole, 247 Va. at 56, 439 S.E.2d at 408).
Code § 19.2-81 provides no express definition of the word “highway.” Consequently, we must look to the plain, commonly understood meaning of the word in order to ascertain the intent of the legislature. See Hulcher v. Commonwealth, 39 Va.App. 601, 605, 575 S.E.2d 579, 581 (2003). Traditionally, a “highway” is considered to be “a road or way on land ... that is open to public use as a matter of right whether or not a thoroughfare.” Webster’s Third New International Dictionary 1069 (1961).
Appellant argues that the definition of “highway” contained in Code § 46.2-100 should be applied to the warrantless arrest requirements of Code § 19.2-81. However, the introductory paragraph of Code § 46.2-100 limits the application of that definition stating: “The following words and phrases when used in this title, for the purpose of this title, have the meanings respectively ascribed to them in this section.... ” (Emphasis added). Put simply, the definition of highway used in Code § 46.2-100 is not, by itself, controlling on the issue of whether or not an officer can make a warrantless arrest of a person pursuant to Code § 19.2-81. Nevertheless, this definition, though not controlling, is helpful to our analysis as it is illustrative of how “highway” has been interpreted by the courts in other circumstances.
The Supreme Court of Virginia has consistently held that a highway is not limited to public roads. See Furman v. Call, 234 Va. 437, 439-40, 362 S.E.2d 709, 711 (1987) (holding that where the evidence was undisputed that the roads around and in a condominium complex were open to the public twenty-four *688 hours a day, seven days a week and the public had never been denied access by guards or gates, the area was a “highway”); see also Mitchell v. Commonwealth, 26 Va.App. 27, 30, 492 S.E.2d 839, 840 (1997). “[T]he test for determining whether a way is a ‘highway’ depends upon the degree to which the way is open to public use for vehicular traffic.” Kay Mgmt. Co. v. Creason, 220 Va. 820, 831-32, 263 S.E.2d 394, 401 (1980). “The public’s free and unrestricted use of a roadway supports the inference that a road is a highway. Evidence that the roadway’s users must obtain either explicit or implicit permission to use the road may refute this inference.” Campbell v. Commonwealth, 39 Va.App. 180, 190, 571 S.E.2d 906, 912 (2002) (citing Kay Mgmt. Co., 220 Va. at 832, 263 S.E.2d at 402). It follows that if a roadway were sufficiently restricted so as to prevent its free use by the public for vehicular traffic, the roadway would not constitute a highway for purposes of Code § 46.2-100. See Caplan v. Bogard, 264 Va. 219, 563 S.E.2d 719 (2002) (holding that the private parking lot of a restaurant, including its entrance, was not a “highway” pursuant to Code § 46.2-100); see also Roberts v. Commonwealth, 28 Va.App. 401, 504 S.E.2d 890 (1998) (holding that a convenience store parking lot, which was privately owned and which was only accessible to the public in connection with the owner’s business invitation, was not a “highway” under Code § 46.2-100).
In drafting Code § 19.2-81, the General Assembly was explicit about the type of road to which it was referring with respect to the “accident” exception to the misdemeanor presence requirement. While the definition in Code § 46.2-100 applies only to “highways,” Code § 19.2-81 uses the language “highways ... of the Commonwealth.” By adding the qualifying language, “of the Commonwealth,” the General Assembly clearly intended to precisely limit the instances to which this exception applies. Thus, if a road does not qualify as a highway under Code § 46.2-100, it certainly would not qualify as a highway “of the Commonwealth” under Code § 19.2-81.
Clearly, the use of the roadways within the Watergate at Landmark was restricted in such a way as to exclude the *689 general public. The evidence at trial established that the accident in question occurred exclusively within the confines of the apartment complex. Its roadways were not “open to public use for vehicular travel,” Kay Mgmt. Co., 220 Va. at 831-32, 263 S.E.2d at 401, nor could they be considered a “road or way on land ... that is open to public use as a matter of right,” Webster’s supra, at 1069. A security gate controlled access to each of the five entrances to the apartment complex. To gain entry, a person would have to obtain explicit permission from a security guard or use a remote transponder. Additionally, a security guard from the apartment complex testified that the area in question was not open to the public. Because of their restricted nature, the roadways of the Watermark at Landmark do not qualify as a highway under Code § 46.2-100, and, thus, cannot be “highways of the Commonwealth” for the purposes of Code § 19.2-81.
Because the accident did not occur on a “highway of the Commonwealth,” the statutory exception to Code § 19.2-81 did not apply, making appellant’s warrantless arrest for driving while intoxicated invalid, as it did not occur in the presence of the arresting officer.[28] Therefore, the certificate of analysis of appellant’s breath test was not administered pursuant to Virginia’s implied consent statute, and the trial court erred in admitting it into evidence on that basis.
For the foregoing reasons, I would reverse appellant’s conviction and remand for a new trial should the Commonwealth be so advised.

. In fact, the Attorney General waived oral argument before the panel.

. For example, the results of a preliminary breath test, which are always taken voluntarily, are never admissible at trial as evidence of guilt. Code § 18.2-267(E); see also Stacy v. Commonwealth, 22 Va.App. 417, 470 S.E.2d 584 (1996).

. The General Assembly has expressly noted that it considers Code §§ 18.2-268.2 through 18.2-268.9 as a series of related “steps.” See Code § 18.2-268.11 ("The steps set forth in §§ 18.2-268.2 through 18.2-268.9 relating to taking, handling, identifying, and disposing of blood or breath samples are procedural and not substantive. Substantial compliance shall be sufficient.” (emphasis added)).

. While Code § 19.2-187 deals with the general admissibility of certificates of analyses, Code § 18.2-268.9 specifically addresses the use of breath-test results as evidence.

. In Easton, unlike the appellant here, Easton conceded to the trial court that she was validly arrested.

. The Commonwealth argues that the language "at any location” in Code § 19.2-81 applies to the location of the accident. That, however, is a misreading of the statute. The words, "at any location” apply only to where the arrest may occur, not the location of the accident. As appellant correctly notes, the words "such accident" refer the reader to prior language in the statute, which indicate that the "accident” exception to the presence requirement is limited to those that occur "on any of the highways ... of the Commonwealth.” Code§ 19.2-81.

. The Commonwealth does not claim that any of the other statutory exceptions to the presence requirement apply.